## EICHBERG *v.* VON KALKSTEIN.

The verdict being amply sustained by the evidence, and there being no question of law involved, this court will not interfere with the discretion of the trial court in refusing to set aside a second verdict in plaintiff's favor.     *Judgment affirmed.*

November 4, 1892.

Before Judge MARSHALL J. CLARKE. Fulton superior court. March term, 1892.

In June, 1881, Mrs. Von Kalkstein sued Mrs. Eichberg to recover $98 alleged to have been usury paid. Two verdicts were obtained by plaintiff, each for the principal amount sued for, with interest. The motion for new trial made by defendant after the rendition of the last verdict was overruled, and she excepted. The grounds of the motion insisted on were, that the verdict was contrary to evidence, without any evidence to support it, decidedly and strongly against the weight of evidence, and contrary to law.

Upon the trial Arnold testified for the plaintiff, as follows: I represented plaintiff in the payment of the money out of which this suit arose. Called at defendant's house several times, and had conversations about the matter with her and her husband. Told them that plaintiff had said to me that defendant had only loaned her $227, namely by paying to Rosser $147 and McMillan & Snow $80 on November 27, 1880. Neither defendant nor her husband made any claim at that time for any other sums advanced. The reason they urged for charging so large a sum of money was, that they had put themselves to inconvenience to get the money and had sold a piece of property for less money than they otherwise would have done. I paid them $325, and although they claimed that a larger amount was due them they finally agreed to accept same, and turned over to me the bond for title which had been given them to secure loan. I know nothing as to the amount of money loaned, nor of any previous transaction, nor as to there being any usury in the transaction.

The husband of defendant testified: He transacted all the business connected with this suit. Plaintiff asked for a loan, and accordingly, on November 27, 1880, he paid for her to McMillan & Snow $71.75, to

Rosser $148.50, to Weil $5, and gave plaintiff $50. Several days after, on November 30, 1888, gave her $60 more. Also had to pay Weil $15 more, which the latter claimed was due them, but which witness did not know about, making a total sum advanced of $350.25, to secure payment of which she transferred to defendant a bond for title. Some time thereafter plaintiff, having an opportunity to sell the property covered by the bond, sent some one, possibly Arnold, to pay back $325 of the amount borrowed, and upon urgent entreaties of plaintiff defendant let her have the bond. Not only was there not a cent of interest charged, but plaintiff has not paid back the full amount borrowed, and still owes defendant $25 on account of money loaned. All of the different sums advanced were given either to plaintiff, her husband, or some one for her, and no one else was in any way connected with the transaction; but no receipt was taken from any one for the additional amounts. Witness had no conversation with any one else regarding this loan, and neither before nor after the $325 was paid did he have any conversation with Arnold. At no time before this suit was brought had plaintiff's husband set up any claim of usury, and at the time the money was paid back nothing was said relating to any statements for plaintiff to the effect that she owed but $227 and the balance was usury. The witness was asked if he had not at the former trial testified that the amount loaned plaintiff was $375, and answered that it was so long ago he could not remember. He was asked if he had not testified at the former trial, that when money was paid back he had said that if there was anything over he would apply it to an old debt, and answered that he had not so testified. He was asked if he had not testified that the reason he charged so much interest was, because he was put to great inconvenience and had to sell property below its value to

raise the money, and answered he had not so testified. He did not tell Arnold during any of the negotiations that he or his wife had advanced any money to plaintiff, except $127 to Rosser and $80 to McMillan & Snow. Did not testify at former trial that Arnold had paid defendant $375. Testified in this case so long ago that his memory is vague as to all points of testimony.

In rebuttal plaintiff offered the evidence of Eichberg upon the former trial, as follows: Was present when the money was advanced, and knew all about the whole transaction. Defendant advanced $345, of which all but $60 was paid November 27, 1880. She paid McMillan & Snow $71.75, Rosser $148, Weil $5, and plaintiff $50. On November 3d, plaintiff said she was in great trouble and wanted $60 dollars more, and defendant let her have that, and at another time let her have $10. In January, 1881, plaintiff paid defendant $375, which was all she could possibly pay, and it was applied to the extinguishment of the debt due defendant, and the remainder given to witness to go on an old debt that plaintiff's husband owed witness. Defendant got only the money she advanced, without one cent of interest. Witness put himself and wife to great inconvenience to let them have this money. This matter was talked over by plaintiff, witness and his wife, in presence of Arnold. The money was all paid at one time to defendant, and was paid her by Arnold. Witness might have given to Arnold as the only reason for demanding so large an amount of money on the $227, that defendant had been put to great inconvenience to get the money lent and had sold a piece of property for less than she otherwise would.

DAVID EICHBERG and E. W. MARTIN, by brief, for plaintiff in error.

FRANK A. ARNOLD and GLENN & SLATON, *contra.*